1

2

3

4                           **UNITED STATES DISTRICT COURT**

5                                **DISTRICT OF NEVADA**

6

7    UNITED STATES OF AMERICA,              )
                                            )
8                       Plaintiff,          )        Case No.  2:10-cr-00596-GMN-GWF
                                            )
9    vs.                                    )        **FINDINGS &**
                                            )        **RECOMMENDATIONS**
10                                          )
     PAUL WOMMER,                           )
11                                          )        **Motion to Dismiss (#15)**
                        Defendant.          )
12   _____)

13          This matter is before the Court on Defendant Paul Wommer's Motion to Dismiss (#15),

14   filed on June 29, 2011; the Government's Response to Defendant's Motion to Dismiss (#21), filed

15   on July 29, 2011; and Defendant's Reply to the Government's Response to Defendant's Motion to

16   Dismiss (#24), filed on August 8, 2011.  The Court conducted a hearing in this matter on August

17   15, 2011.

18                               **FACTUAL BACKGROUND**

19          The multi-count indictment in this case charges the Defendant with violations of 31 U.S.C.

20   §§ 5324(a)(1), (a)(3), (d)(1) and/or (d)(2).  For purposes of Defendant's motion to dismiss only, the

21   parties do not dispute the material facts underlying these charges.

22          Defendant Paul Wommer is an attorney-at-law.  Between June 30, 2010 and July 8, 2010,

23   Mr. Wommer made four withdrawals, each in the amount of $9,500.00, from his personal bank

24   account at Nevada State Bank.  On July 9, 2010, Mr. Wommer withdrew another $6,000.00 from

25   that account.  On July 12, 2010, Mr. Wommer made two withdrawals each in the amount of

26   $9,500.00 from his Nevada State Bank business account, "Wommer Law Offices, Incorporated."

27   On July 13, 2010, Mr. Wommer made an additional withdrawal of $9,500.00 from the business

28   account.  The total amount withdrawn by Mr. Wommer from these accounts was $72,500.00.

1       Mr. Wommer provided most of the withdrawn funds to his part-time legal assistant, Angela

2   Lambelet, who deposited them in her personal account at Nevada State Bank.  Ms. Lambelet made

3   deposits of $9,500.00 into her account on June 30, July 2, 7, 12, 13 and 14, 2010.  She deposited

4   $9,200.00 into her account on July 15, 2010.  The total of these deposits was $66,200.00.

5       The bank reported Ms. Lambelet's deposits to the Internal Revenue Service ("IRS").  An

6   IRS agent then interviewed Ms. Lambelet who stated that she deposited the funds into her account

7   at Mr. Wommer's request.  Ms. Lambelet stated that she had told Mr. Wommer that she would only

8   deposit the funds into her account if she did not have to pay tax on the funds and it was not illegal.

9   Mr. Wommer assured her that if she deposited less than $10,000 on each occasion, she would not

10  owe any tax and would not be in any trouble.  Ms. Lambelet stated that she was aware that Mr.

11  Wommer had issues with the IRS and she was aware that she was hiding his money from the IRS,

12  but she did not know she was doing anything illegal.

13      The IRS agent then interviewed Mr. Wommer who admitted that Ms. Lambelet deposited

14  his funds into her account at his direction.  Mr. Wommer stated that he had an unresolved $17,000

15  income tax assessment for interest and penalties which he believed he could resolve with the IRS

16  for a lower amount.  He was concerned, however, that the IRS would levy on his accounts and seize

17  the funds before he could negotiate a settlement of his tax obligation.  Mr. Wommer also stated that

18  he had received an $18,000 payment on a loan that he had made.  The debtor filed bankruptcy

19  shortly thereafter and the bankruptcy trustee had sent a letter to Mr. Wommer requesting that the

20  $18,000 be turned over to the bankruptcy court.  Mr. Wommer was also concerned that the

21  bankruptcy trustee would levy on his bank accounts.  Finally, Mr. Wommer told the IRS agent that

22  he was concerned that his girlfriend, who resided in his house and had access to his bank accounts,

23  would drain his accounts.  For all of these reasons, Mr. Wommer withdrew the funds from his bank

24  accounts and had Ms. Lambelet deposit them into her bank account.

25      Title 31 of the United States Code, Section 5313(a), and regulations adopted thereto, require

26  financial institutions to report to the Government currency transactions of more than $10,000.

27  Section 5324(a)(1) provides that no person shall, for the purpose of evading the reporting

28  requirement under section 5313(a), cause or attempt to cause a domestic financial institution to fail

1   file a report required under section 5313(a) or any regulation prescribed thereunder.  Section

2   5324(a)(3) provides that no person shall, for the purpose of evading the reporting requirement

3   under section 5313(a) or any regulation prescribed thereunder, "structure or assist in structuring, or

4   attempt to structure or assist in structuring, any transaction with 1 or more nonfinancial trades or

5   businesses."

6      Section 5324(d)(1) provides that "whoever violates this section shall be fined in accordance

7   with title 18 of the United States Code, imprisoned for not more than 5 years, or both."  Section

8   5324(d)(2) provides that "whoever violates this section while violating another law of the United

9   States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month

10   period shall be fined twice the amount provided in [18 U.S.C. 3571 (b)(3) or (c)(3)], imprisoned for

11   not more than ten years, or both."

12      Counts One through Five of the indictment charge Mr. Wommer with violating Section

13   5324(a)(3) in regard to each of the five withdrawals that he made from his personal bank account

14   between June 30, 2010 and July 9, 2010.  Counts Six through Twelve charge Mr. Wommer with

15   violating Section 5324(a)(3) in regard to each of the deposits that were made into Ms. Lambelet's

16   personal bank account between June 30, 2010 and July 15, 2010.  Count Thirteen charges Mr.

17   Wommer with violating Section 5324(a)(3) in regard to the withdrawal of $9,500.00 from his

18   business bank account on July 13, 2010.  The indictment also alleges that each of these withdrawals

19   or deposits were made "as part of a pattern of illegal activity involving more than $100,000 in a 12

20   month time period." *Indictment (#1)*.

21      Count Fourteen charges Defendant Wommer with violating Section 5324(a)(1) by causing

22   or attempting to cause Nevada State Bank to fail to file a report or maintain a record by making two

23   withdrawals each in the amount of $9,500 from his business account on July 12, 2010.  Count

24   Fourteen also alleges that this was done "as part of a pattern of illegal activity involving more than

25   $100,000 in a 12 month time period."

**DISCUSSION**

27   Defendant moves for dismissal of the indictment on the grounds that it is multiplicitous in

28   that it charges a single offense, structuring of a transaction in violation of 31 U.S.C. § 5324(a)(3),

3

1    in more than one count.  "An indictment is multiplicitous when it charges multiple counts for a

2    single offense, producing two penalties for one crime and thus raising double jeopardy questions."

3    *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005); *United States v. Vargas-Castillo*, 329

4    F.3d 715, 718-19 (9th Cir. 2003).  Two counts within an indictment are not multiplicitous, however,

5    if "each separately violated statutory provision requires proof of an additional fact which the other

6    does not."  *Id.*  The Ninth Circuit has not addressed the issue of multiplicitous counts in an

7    indictment charging a defendant with two or more counts of structuring financial transactions in

8    violation of 31 U.S.C. § 5324(a)(3).  Other circuit courts, however, have addressed this question.

9         In *United States v. Davenport*, 929 F.2d 1169 (7th Cir. 1991), the defendants, a husband and

10   wife, were convicted of violating 31 U.S.C. § 5324(a)(3).  The evidence presented at trial

11   established that the defendants "obtained possession of some $100,000 in cash—how, we do not

12   know."  *Id.* at 1171.  The wife told the IRS investigator that the money was an inheritance from her

13   husband's father.  The evidence regarding the father's financial circumstances, however, cast

14   substantial doubt on that explanation.  Between November 5 and November 19, 1987, the

15   defendants made ten separate deposits, each less than $10,000, in multiple branches of two banks in

16   which they had accounts.  The indictment was in twelve counts.  The first count charged the

17   defendants with a conspiracy to violate § 5324(a)(3).  Count two charged defendants with violating

18   § 5324(a)(3) itself.  Counts three through twelve charged each of the ten deposits as a separate

19   violation of the statute.

20        In holding that counts three through twelve should have been dismissed, the Seventh Circuit

21   stated:

22              The statute does not forbid the making of deposits. It forbids the
             structuring of a transaction. The Davenports received $100,000 in
23              cash, which they wanted to deposit. The receipt and deposit of the
             $100,000 were the transaction that the Davenports structured by
24              breaking it up into multiple deposits, of which ten had been made
             when they were caught. There was one structuring, one violation. The
25              government's position leads to the weird result that if a defendant
             receives $10,000 and splits it up into 100 deposits he is ten times
26              guiltier than a defendant who splits up the same amount into ten
             deposits. It could, we suppose, be argued—though the government
27              does not in fact argue—that the more deposits a defendant makes, the
             smaller each one is likely to be, and that the smaller the individual
28              deposit the less likely the bank is to aggregate them. But against this

4

1

2
       it can be argued with equal plausibility that a proliferation of deposits
increases the probability of apprehension and punishment, by
creating a thicker paper trail and reinforcing an inference of evil
intent. Unable as we are to say that a defendant's conduct is more
dangerous the greater the number of deposits, we are unable to
construct any rationale for the government's position.

3

4

5
       We can find no case in which the issue of the unit of violation of
section 5324(3) has been discussed; but our impression is that until
this case the practice was to charge a single count of structuring.
*United States v. Scanio,* 900 F.2d 485, 487 (2d Cir.1990). We
conclude that the structuring itself, and not the individual deposit, is
the unit of crime.

6

7

8
    *Davenport*, 929 F.2d at 1171-72.

9
    In *United States v. Dashney*, 937 F.2d 532 (10th Cir. 1991), the defendant won

10
approximately $92,400.00 in cash while gambling in Las Vegas. The defendant purchased or

11
attempted to purchase numerous cashier's checks or similar instruments from different banks for

12
$10,000 or less.  The checks actually purchased by Defendant aggregated $99,999.93.  The

13
indictment charged defendant with two counts of violating of 31 U.S.C. § 5324(a)(3).  In holding

14
that the defendant should only have been charged in one count, the Tenth Circuit stated:

15

16

17

18

19

20

21

22

23

24
       We must agree with the defendant that the rationale of *Davenport*
clearly applies to the facts in the instant case. As in *Davenport,* there
was one "cash hoard" involved here. Count 1 of the indictment here
alleges that the defendant Dashney "structured or attempted to
structure a transaction or transactions" with the purchase on the same
business day of $99,999.93 in cashier's checks at ten banks. Count 2
here alleged that Dashney attempted to structure a transaction or
transactions with the purchase of cashier's checks totaling
approximately $100,000, alleging transactions at two banks. It is
clear from our record that the same $100,000 fund was involved in
the conduct alleged in both counts. . . . This record thus shows that
Dashney, throughout the events alleged, was dealing with the same
fund of approximately $100,000 brought from Las Vegas and which
he attempted repeatedly to use in separate purchases of cashier's
checks for $10,000 or less. The persuasive opinion in *Davenport*
convinces us that here also there was a multiplicity of charges,
splitting up one unit of prosecution contemplated by the statute into
two separate counts.

25
    *Dashney*, 937 F.3d at 541-42.

26
    The court rejected the government's argument that it was proper to distinguish between the

27
structured transactions which were consummated and those which were attempted but

28
unconsummated.  Again relying on *Davenport*, the court stated: "The basic violation of structuring

1  by attempting to conceal *one* large cash hoard, during one day's conduct, underlies both counts

2  charged against Dashney. They concerned only *one* structuring violation in our opinion." *Id.* 937

3  F.2d at 542.

4         The court reached a similar conclusion in *United States v. Nall*, 949 F.2d 301, 308 (10th Cir.

5  1991). In that case, the defendant received a lump sum cash payment of $24,000 or $26,000 in a

6  real property sales transaction. Over the course of nine days, defendant made three separate

7  deposits of the money into his bank account. These deposits were charged as separate counts in the

8  indictment. The court held, however, that there was only one structuring of a single unit or "hoard"

9  of cash. Therefore, only one count of structuring should have been alleged. The Second Circuit in

10  *United States v. Handakas*, 286 F.3d 92 (2nd Cir. 2002)(overruled on other grounds in *United States*

11  *v. Rybicki*, 354 F.3d 124 (2nd Cir. 2003)(en banc)) also followed *Davenport* and *Nall.*

12         Two district court decisions involving motions to dismiss or consolidate indictments are

13  also pertinent to the decision on this motion. In *United States v. Kushner*, 256 F.Supp.2d 109

14  (D.Mass. 2003), the government alleged that the defendants operated an unlicensed money-lending

15  and check-cashing business between January 1995 and February 1999. The defendants allegedly

16  "funneled" their business receipts through various accounts at two banks. They deposited over $15

17  million into the accounts and withdrew large sums of money from the accounts by cashing checks

18  against them. The government charged the defendants with structuring their withdrawals of

19  currency from the accounts "in particular increments so as to avoid any single withdrawal that

20  would have exceeded the $10,000 reporting threshold established by the Department of the

21  Treasury." *Id.* at 111. The indictment alleged one hundred separate counts of structuring in

22  violation of 31 U.S.C. § 5324(a)(3). The defendants moved to dismiss the indictment pursuant to

23  Rule 12 of the Federal Rules of Criminal Procedure.

24         In holding that these counts were multiplicitous, the court stated:

25              In the case at bar, the Government has charged the Defendants with
                independent structuring counts for each day in which the Defendants
26              attempted to avoid the federal reporting requirements. In determining
                the "allowable unit of prosecution," however, courts have stated that
27              "no provision of the statute indicates that a single course of
                structuring can be segmented based on 12-month intervals (*or any*
28              *other intervals of time*) or by the amount of funds in any interval."

                                            6

1       *United States v. Handakas,* 286 F.3d 92, 98 (2d Cir.2002) (emphasis
        added).  Rather, courts look to the "source of the funds structured" in
2       determining the allowable unit of prosecution. *Id.*

3   *Kushner*, 256 F.23d at 112-13.

4   In holding that there was only one structuring crime, the court explained:

5       *All* of the money within the Defendants' accounts was the product of
        the Defendants' unlicensed business, and it was the sum in its
6       entirety that the Defendants sought to conceal. They achieved
        concealment by avoiding daily reporting requirements, but the
7       amounts of the daily withdrawals are irrelevant.

8   *Id.* at 113.

9   The court further stated:

10      It is true that the instant case involves withdrawals from a bank-as
        opposed to deposits-thus making it more difficult to trace funds to
11      particular sources.  That is, however, the essence of money
        laundering.  If the Government chooses to identify the various
12      sources from which the money in the Defendants' accounts was
        derived, that is, the various amounts "paid" by the Defendants'
13      "clients" or "customers," the Government could so charge these
        transactions as separate structuring counts under the reasoning of
14      *Handakas.*  Otherwise, the Government may only sustain one count
        of structuring that spanned the relevant time period.
15
        In sum, the structuring as alleged here was not conducted so as to
16      withdraw discrete amounts of money daily to avoid the reporting
        requirements; it was structured so that the daily reporting
17      requirements would reveal neither the overall scheme, nor the
        substantial amounts of cash the Defendants illegally received from
18      various sources.

19  *Id.* at 113-14.

20      In its response to Defendant's motion to dismiss, the Government cites *Kushner* for the

21  proposition that "if the government cannot identify a single source of funds, the government has the

22  option to define the unit of prosecution as a series of single counts involving an overall scheme to

23  structure under section (a)(3)."  That is a clear misreading of *Kushner*.  The court, instead, stated

24  that if the government can show that the defendant separately structured funds that had discrete

25  sources, it can charge separate structuring offenses.  Because the government was unable to do so,

26  however, the court in *Kushner* granted the defendant's motion.  Allowing the government to charge

27  more than one count of structuring because it cannot identify a single source of funds would also be

28  contrary to *Davenport.*  The defendants in *Davenport* claimed that the source of the $100,000 that

they were convicted of structuring was an inheritance from the husband's father. Although the

Seventh Circuit was highly dubious of that explanation, it still held that the government could not

charge more than one structuring offense.

For purposes of this case, it is also noteworthy that the defendants in *Kushner* withdrew

funds from more than one bank account. The court nevertheless treated their conduct as a single

structuring offense, rather than two or more structuring offenses depending on the number of

accounts as to which deposits or withdrawals were made.

In *United States v. Catherman*, 2007 WL 2790384 (S.D.Iowa 2007), the indictment charged

defendant with five counts of structuring in violation of 31 U.S.C. § 5324(a)(3) based on bank

deposits he made in amounts of less than $10,000 each. (It appears that each count involved more

than one deposit. The counts were differentiated or separated by time periods in which the deposits

were made.) The defendant moved to dismiss or, in the alternative, to consolidate the indictment

into one count. In support of his motion, the defendant claimed that the source of the funds alleged

to have been structured "was a single hoard he had saved over many years." The government

disputed defendant's claim regarding the source of the funds as "hearsay," and argued that the

determination of whether there was more than one structuring crime should be determined by the

evidence presented at trial. The government conceded, however, that it was unable to determine

the source of the funds. In granting the motion to consolidate the five counts into one, the court

stated:

> "[W]hether an aggregate of acts constitutes a single course of
> conduct and therefore a single offense, or more than one, may not be
> capable of ascertainment merely from the bare allegations of an
> information and may have to await the trial on the facts." *United
> States v. Worthon,* 315 F.3d 980, 983 (8th Cir.2003) (quoting *United
> States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 225 (1952)).
> Defendant claims the funds are from one cash hoard; however, the
> Court cannot rely on Defendant's mere assertion of such in
> determining whether the counts are multiplicitous. While the Eighth
> Circuit has recognized some cases will have to await a trial on the
> facts before the evidence will indicate whether counts are
> mulitiplicitous or not, in the present case the Government conceded
> at hearing it has no information regarding the source of the funds
> except for Defendant's statements at the time the deposits were
> made, and the Government admitted it had no further evidence to
> present at trial regarding the ultimate source of the funds. Given the
> unique circumstances of this case, where the Government has

8

conceded there is no information capable of identifying the source of the funds and acknowledges it will have no additional evidence to present on the issue at trial, the Court can conclude the Government has insufficient evidence to charge counts one through four as separate structuring transactions.

*Catherman*, 2007 WL 2790384 at *5.

According to the Government's allegations in this case, between late June and mid-July 2010, Mr. Wommer had at least $72,500 on deposit in his personal and business accounts at Nevada State Bank. There is no information regarding the source of these funds other than Defendant's representation, through his counsel, that they were lawful earnings derived from the Defendant's practice of law. Between June 30, 2010 and July 9, 2010, Mr. Wommer withdrew $44,000 from his personal account. On July 12, 2010 and July 13, 2010, Mr. Wommer withdrew $28,500 from his business account.[1] Between June 30, 2010 and July 15, 2010, Ms. Lambelet, at Mr. Wommer's request, deposited most of these funds, $66,200, into her personal bank account. The alleged purpose for these withdrawals and deposits, as Mr. Wommer admitted to the IRS investigator, was to avoid the levying upon his accounts and the seizure of his funds by either the IRS or the bankruptcy trustee, and also to arguably place the funds beyond the grasp of Mr. Wommer's girlfriend. By structuring the withdrawals and deposits in amounts less than $10,000, Defendant apparently hoped to avoid the reporting of the withdrawals or deposits to the IRS which would have facilitated the tracing of his money into Ms. Lambelet's account. Based on these alleged facts, there was only one alleged structuring crime committed by Defendant Wommer. Accordingly, Counts One through Thirteen of the Indictment should be consolidated into a single count alleging a violation of 31 U.S.C. §5324(a)(3).

The indictment does not charge Defendant Wommer with violating 31 U.S.C. §5324(a)(3) in regard to the two $9,500.00 withdrawals that he made from his business account on July 12, 2010. Instead, Count Fourteen alleges that he violated 31 U.S.C. §5324(a)(1) in regard to these two withdrawals. §5324(a)(1) provides that no person shall, for the purpose of evading the reporting

---

[1] As discussed herein, the July 12, 2010 withdrawals are not charged as a "structuring" offense under Section 5324(a)(1).

1    requirement under §5313(a), cause or attempt to cause a domestic financial institution to fail to file

2    a report required under section 5313(a) or any regulation prescribed thereunder.  The court in

3    *United States v. Phipps*, 81 F.3d 1056 (9th Cir. 1996), construed subsections (a)(1) and (a)(3) of 31

4    U.S.C. §5324. The defendant in *Phipps* engaged in four separate financial transactions on different

5    days involving deposits or withdrawals of less than $10,000.  The indictment charged defendant

6    with violating 31 U.S.C. §5324(a)(1) in regard to these transactions.   In reversing defendant's

7    conviction under §5324(a)(1), the court held that in order to violate this subsection the financial

8    institution must have had a duty to report the transactions under the regulations adopted pursuant to

9    §5313(a).  Under the regulations, the bank, however, had no duty to report transactions of $10,000

10   or less that occur on a given day and, therefore, defendant did not cause or attempt to cause the

11   bank to fail to file a report that it was required to file.  (The defendant could have been prosecuted

12   for structuring under subsection (a)(3), but was not charged under that section.)

13          31 U.S.C. §103.22 was the reporting regulation in effect on July 12, 2010.  Subsection (b)

14   of this regulation states that "[e]ach financial institution shall file a report of each deposit,

15   withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial

16   institution which involves a transaction in currency of more than $10,000, except as otherwise

17   provided in this section."  Subsection (c)(2) further provides:

18          In the case of financial institutions other than casinos, for purposes of
            this section, multiple currency transactions shall be treated as a single
19          transaction if the financial institution has knowledge that they are by
            or on behalf of any person and result in either cash in or cash out
20          totaling more than $10,000 during any one business day (or in the
            case of the Postal Service, any one day).  Deposits made at night or
21          over the weekend or holiday shall be treated as if received on the next
            business day following the deposit.
22

23          According to the Government, Mr. Wommer made the first $9,500.00 withdrawal on July

24   12, 2010 at 10:20 A.M.  He made the second $9,500.00 withdrawal at 4:40 P.M.  Because the two

25   withdrawals ("cash out") exceeded $10,000, they should have been reported to the Department of

26

27

28

1   the Treasury by the bank.[2]   Whether Mr. Wommer timed the withdrawals on July 12, 2010 to cause

2   or  attempt to cause the bank to fail to file the required report is an issue for trial.  Count Fourteen,

3   however, charges a different offense, based on a different factual element, than the offense(s)

4   charged in Counts One through Thirteen.  It is therefore not subject to dismissal on "multiplicitous"

5   grounds.

## CONCLUSION

7          Based on the foregoing, the Court concludes that Counts One through Thirteen of the

8   Indictment charge Defendant Wommer in multiple counts with one offense, structuring of a

9   financial transaction in violation of 31 U.S.C. §5324(a)(3).  These counts should therefore be

10  consolidated into one count.   Count Fourteen, however, charges Defendant a separate offense

11  under 31 U.S.C. §5324(a)(1) and that count is not subject to dismissal on the grounds that it is

12  multiplicitous.  Accordingly,

## RECOMMENDATION

14         **IT IS RECOMMENDED** that Defendant Paul Wommer's Motion to Dismiss (#15) be

15  **granted** in regard to Counts One through Thirteen of the Indictment with leave granted to the

16  Government to file an amended indictment charging Defendant Wommer in one count with

17  violating  31 U.S.C. §5324(a)(3).

18         **IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss (#15) be

19  **denied** in regard to Count Fourteen which charges Defendant with a separate offense under 31

20  U.S.C. §5324(a)(1).

## NOTICE

22         Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be

23  in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has

24  held that the courts of appeal may determine that an appeal has been waived due to the failure to

25  file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit

26

27
            [2] It is not clear from the record on this motion whether the bank reported or failed to report
28  these withdrawals as an aggregate transaction.

1  has also held that (1) failure to file objections within the specified time and (2) failure to properly

2  address and brief the objectionable issues waives the right to appeal the District Court's order

3  and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153,

4  1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

5       DATED this 22nd day of August, 2011.

6

7  _____

   GEORGE FOLEY, JR.

8  United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28